# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Amy Tripp, Conservator of RRKC,
a minor,

                    Plaintiff,

v.

United States of America,

                    Defendant.

_____/

Case No. 21-12859

Judith E. Levy
United States District Judge

Mag. Judge Curtis Ivy, Jr.

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [62]

Before the Court is a motion for partial summary judgment filed by Plaintiff Amy Tripp, the conservator for minor child RRKC. (ECF No. 62.) In her motion, Plaintiff contends that Michigan's limitation on noneconomic damages in malpractice actions, Mich. Comp. Laws § 600.1483, does not apply to her claim for failure to report child abuse or neglect under Michigan's Child Protection Law, Mich. Comp. Laws § 722.621, et seq. For the reasons set forth below, Plaintiff's motion is DENIED.

## I.     Background

### A.     Factual Background

RRKC was born in April 2019 via emergency C-section at Covenant Medical Center in Saginaw, Michigan to Megan Sarles and Taylor Cantu. At the time of her birth, RRKC weighed 3200 grams and had a head circumference of 36.5 centimeters. (ECF No. 63-2, PageID.905.) Due to difficulties with breathing following her birth, RRKC was admitted to the neonatal intensive care unit. (*Id.* at PageID.910.) RRKC was discharged from the hospital on April 15, 2019 with instructions to follow up with Dr. Eventure Bernardino, a family physician at Great Lakes Bay Health Center ("GLBHC"). (*See id.* at PageID.905.) At the time of her discharge, RRKC weighed 3275 grams and had a head circumference of 36.5 centimeters. (*Id.* at PageID.906.)

At her first visit to GLBHC on April 16, 2019, RRKC weighed 7.44 pounds (3374 grams).[1] (ECF No. 63-5, PageID.914.) Dr. Bernardino noted no concerns with RRKC and instructed the parents to follow up in

---

[1] While Covenant Medical Center used metric measurements, GLBHC used imperial measurements. At this visit, RRKC's head circumference was recorded as 14 inches (35.56 centimeters). (ECF No. 63-5, PageID.914.) However, both parties appear to agree that this measurement was erroneous and likely the result of mismeasurement. (*See* ECF No. 63-9, PageID.934; ECF No. 63-16, PageID.959.)

one month. (*See id.* at PageID.914–415.) On May 21, 2019, RRKC had a well-child visit with Dr. Bernardino, at which he noted that RRKC "[d]id not gain weight that much, discussed with mother proper feeding." (ECF No. 63-7, PageID.920.) At the second visit, RRKC weighed 7.88 pounds (3574 grams) and had a head circumference of 15.75 inches (40 centimeters). (*Id.*) On May 30, 2019, RRKC returned to GLBHC for a weight check. (ECF No. 63-10, PageID.940.) Her weight was recorded as 8.25 pounds (3742 grams). (*Id.*)

On June 10, 2019, RRKC missed her scheduled well-child visit.[2] (ECF No. 63-11.) Instead, RRKC's parents brought her in for her two-month appointment four days later on June 14, 2019. (ECF No. 63-14, PageID.951.) At that time, RRKC weighed 8.94 pounds (4055 grams) and had a head circumference of 17 inches (43.18 centimeters). (*Id.* at PageID.952.) Dr. Bernadino noted: "Infant needs referral to maternal and infant care. It seems to me that there is poor care on the infant. Parents advised to feed the baby as much as she wants or feed more[.]

---

[2] RRKC's parents testified that they missed this appointment because Cantu was concerned about Dr. Bernadino or the nurses observing bruises on RRKC. (*See* ECF No. 63-12, PageID.944–945; ECF No. 63-13, PageID.948–949.)

Reassured them they are not overfeeding her, in fact she is very underweight right now." (*Id.* at PageID.951.)

On June 20, 2019, a friend of RRKC's parents called Child Protective Services ("CPS") and indicated that "[RRKC] has had marks and bruises on her sides, legs, neck and arms," and that "[Cantu] also been seen swinging [RRKC] around by one arm until she screams." (ECF No. 63-19, PageID.964–965; *see also* ECF No. 39-7, PageID.352– 353.) They also indicated to CPS that Cantu and Sarles did not have a permanent residence, had been staying with a known drug dealer, drove while intoxicated with RRKC in the car, and had stolen wipes, formula, and diapers. (ECF No. 63-19, PageID.964–965.) CPS and the Saginaw Police Department made several unsuccessful attempts to contact Cantu and Sarles. (*Id.* at PageID.965–967.) Cantu eventually called CPS, stating that RRKC was cared for and that everything was "fine." (*Id.* at PageID.967.)

On June 24, 2019, RRKC was taken to the emergency room at Covenant Medical Center in Saginaw, Michigan after exhibiting seizure-like symptoms. (*See* ECF No. 63-20, PageID.975–976; *see also* ECF No. 63-19, PageID.967–968.) Hospital staff discovered that RRKC

4

had suffered multiple fractures to her arms and ribs that were consistent with "nonaccidental trauma." (ECF No. 63-20, PageID.975–976; *see also* ECF No. 63-19, PageID.968–969.) Additional testing also revealed multiple hemorrhages in RRKC's eyes and brain, with evidence of chronic bleeding in her brain. (ECF No. 63-20, PageID.975–976; *see also* ECF No. 63-19, PageID.968–969.) On June 25, 2019, RRKC was transferred to C.S. Mott Children's Hospital at the University of Michigan in Ann Arbor, Michigan as a "level 1 trauma," where she remained for over one month. (*See* ECF No. 63-20, PageID.975–978.) The discharge summary indicates that RRKC "may have significant lasting impairments in functional and cognitive development for [her] age as well as poor response to visual and auditory stimuli, all secondary to abusive head trauma." (*Id.* at PageID.973.)

Prior to her discharge, RRKC was placed with a foster care family. (*See id.* at PageID.981; *see also* ECF No. 63-19, PageID.971 (noting referral to foster care).) Sarles and Cantu's parental rights were subsequently terminated. (*See* ECF No. 63-21, PageID.984.) On January 11, 2021, Plaintiff Amy Tripp was appointed as conservator for

5

RRKC. (ECF No. 63-21, PageID.983.) On January 12, 2022, Cantu was sentenced to 33 months' to 10 years' imprisonment after pleading no contest to second degree child abuse. (ECF No. 63-22, PageID.987.) On February 4, 2022, Jamie and Paul Taylor finalized their adoption of RRKC. (ECF No. 63-21, PageID.983.)

## B. Procedural History

On or about April 5, 2021, Plaintiff submitted a claim for damage, injury, or death ("Form 95") with the United States Department of Health and Human Services on behalf of RRKC. (ECF No. 68-2.) Plaintiff subsequently initiated this action in federal court against Defendant United States of America on December 8, 2021.[3] (ECF No. 1.)

---

[3] Plaintiff brought this case against the United States of America under 42 U.S.C. § 233. (*See* ECF No. 5, PageID.72.) As the Sixth Circuit recently explained:

> The Public Health Service ("PHS") Act makes the [Federal Tort Claims Act ("FTCA")] the exclusive remedy against the United States in actions for damages for personal injury or death resulting from the performance of medical, surgical, dental, or related functions by an employee or officer of the PHS while acting within the scope of his or her employment.
>
> The [Federally Supported Health Centers Assistance Act ("FSHCAA")], as amended, allows for certain health care entities to apply for federal funds under § 330 of the PHS Act, and, in turn, for the officers, board members, employees, and certain contractors of these entities to be "deemed" employees of the PHS for the purposes of obtaining the same medical malpractice liability protection. When the

The case was assigned to the Honorable Victoria A. Roberts. Several days after filing the original complaint, Plaintiff filed an amended complaint, removing all unredacted references to minor RRKC's full name and date of birth. (ECF No. 5; *see also* ECF Nos. 6, 7.) The amended complaint includes a single count for "MEDICAL NEGLIGENCE." (ECF No. 5, PageID.82 (emphasis omitted).) Defendant filed an answer to the amended complaint. (*See* ECF Nos. 19, 21.) In its answer, Defendant asserted that "to the extent Plaintiff and/or infant is entitled to recover medical malpractice noneconomic damages, the damages are subject to Mich. Comp. Laws § 600.1483." (ECF No. 21, PageID.175.) The parties subsequently commenced discovery. (*See* ECF No. 27.)

On February 1, 2023, Plaintiff filed a motion for leave to file a second amended complaint. (ECF No. 42.) The motion sought to add an additional count for "FAILURE TO PROVIDE COMPULSORY

---

FSHCAA applies, the United States substitutes itself in for the defendant, and the action proceeds under the FTCA.

*Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 406–07 (6th Cir. 2024) (internal citations omitted). As relevant here, GLBHC was deemed to be an employee of PHS effective January 1, 2019 through December 31, 2019. (ECF No. 63-4, PageID.913.) Thus, the United States of America was properly named as Defendant in this action.

7

TRAINING TO MANDATORY REPORTERS REGARDING CHILD ABUSE AND NEGLECT" pursuant to 34 U.S.C. § 20341(h) and Mich. Comp. Laws §§ 722.623(1)(a) and 722.633(1). (ECF No. 42-7, PageID.434–436 (emphasis omitted); *see also* ECF No. 42, PageID.382.) Plaintiff's asserted basis for this new claim was Dr. Bernardino's testimony during his June 9, 2022 deposition that he did not receive any training concerning his obligations as a mandatory reporter. (*See* ECF No. 42, PageID.380–382, 386–387, 392; ECF No. 42-1, PageID.399, 401–403.) Defendant opposed Plaintiff's motion. (ECF No. 43.) On April 5, 2023, Judge Roberts denied the motion, finding that Plaintiff could not show good cause for failing to amend by the July 15, 2022 deadline imposed by the Court. (ECF No. 47, PageID.635–639.) Judge Roberts also found that allowing Plaintiff to amend would prejudice the United States. (*Id.* at PageID.639–640.)

Following Judge Roberts' retirement on September 1, 2023, the case was reassigned to the undersigned. On December 12, 2023, Plaintiff filed the present motion for partial summary judgment. (ECF No. 62.) Defendant filed a response opposing the motion (ECF No. 63),

and Plaintiff replied. (ECF No. 68.) With the Court's permission, Defendant filed a sur-reply. (ECF No. 70.)

## II.   Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir. 2002)).

## III.   Analysis

The substantive law of Michigan governs this dispute. *Huddleston v. United States*, 485 F. App'x 744, 745 (6th Cir. 2012) ("Courts applying the FTCA look to the substantive tort law of the state in which the cause of action arose to determine liability and damages." (citation omitted)). In Michigan, medical malpractice actions are subject to a

9

statutory cap on noneconomic damages.[4] Mich. Comp. Laws § 600.1483(1). The statute defines "noneconomic loss" as "damages or loss due to pain, suffering, inconvenience, physical impairment, or physical disfigurement, loss of society and companionship, . . . loss of consortium, or other noneconomic loss." *Id.* § 600.1483(3).

Plaintiff does not dispute that this limitation on noneconomic damages applies to her claim for medical malpractice. Instead, Plaintiff argues that the cap does not apply to claims for failure to report child abuse or neglect under Mich. Comp. Laws § 722.633. (*See* ECF No. 62, PageID.870–873.) Defendant responds that there is no claim for failure to report child abuse in this case. (*See* ECF No. 63, PageID.890–896.) As set forth below, the Court concludes that § 600.1483 does not apply to

---

[4] The cap on noneconomic damages is adjusted annually by the state treasurer "at the end of each calendar year to reflect the cumulative annual percentage change in the consumer price index." Mich. Comp. Laws § 600.1483(4). As of January 31, 2024, the cap has been raised to $569,000.00 or, when the malpractice results in certain permanent disabilities, $1,016,000.00. Dep't of Treasury, State of Mich., *Limitation on Noneconomic Damages and Product Liability Determination on Economic Damages* (Jan. 31, 2024), https://www.michigan.gov/treasury/-/media/Project/Websites/treasury/Uncategorized/2024/Economic-Reports-and-Notices-2024/Limitation-on-NonEconomic-Damages-Jan-24-Signed.pdf.

claims under § 722.633, but Plaintiff has not asserted such a claim in this case and cannot do so now.[5]

> ### A. Claims for Failure to Report Child Abuse are Not Subject to Michigan's Cap on Noneconomic Damages in Medical Malpractice Actions

Michigan's Child Protection Law provides that "[a] person who is required by this act to report an instance of suspected child abuse or neglect and who fails to do so is civilly liable for the damages proximately caused by the failure." Mich. Comp. Laws § 722.633(1). Physicians are among those required to report suspected abuse or neglect under the statute. Mich. Comp. Laws § 722.623(1)(a). These reporting requirements also extend to any

> dentist, physician[ ] assistant, registered dental hygienist, medical examiner, nurse, person licensed to provide emergency medical care, audiologist, psychologist, physical therapist, physical therapist assistant, occupational therapist, athletic trainer, marriage and family therapist, licensed professional counselor, social worker, licensed master's social worker, licensed bachelor's social worker, registered social service technician, social service technician, a person employed in a professional capacity in any office of

---

[5] Because the Court concludes that there is no claim for failure to report child abuse in this case, the Court does not reach Defendant's arguments regarding sovereign immunity. (*See* ECF No. 63, PageID.899–901; ECF No. 70, PageID.1274–1275.)

the friend of the court, school administrator, school counselor or teacher, law enforcement officer, member of the clergy, or regulated child care provider who has reasonable cause to suspect child abuse or child neglect[.]

*Id.*

In *Lee v. Detroit Medical Center*, the Michigan Court of Appeals considered whether claims against doctors based on § 722.633(1) are properly understood as medical malpractice claims or as ordinary negligence claims when "the alleged failure to report occurred during medical treatment." *See* 285 Mich. App. 51, 59–64 (2009). Under Michigan law, "[a] medical malpractice claim is distinguished by two defining characteristics. First, medical malpractice can occur only 'within the course of a professional relationship.' Second, claims of medical malpractice necessarily 'raise questions involving medical judgment.'" *Id.* at 61 (second alteration in original) (quoting *Bryant v. Oakpointe Villa Nursing Ctr., Inc.*, 471 Mich. 411, 422 (2004)). However, as noted above, Michigan's Child Protection Law "expressly states that it applies to more than just medical doctors." *Id.* at 62. And although those individuals "do not have any medical education or training, . . . they also are mandated by statute to make the same determination on the basis of the same standard: 'reasonable cause to suspect child abuse

or neglect.'" *Id.* As a result, "the determination regarding whether there is reasonable cause to suspect abuse or neglect does not require the use of medical judgment." *Id.* Therefore, "an action against a doctor for complying with, or failing to comply with, the [Child Protection Law] is entirely separate from an action against that doctor for medical malpractice in treating the child" and is properly considered a claim for ordinary negligence. *See id.* at 64; *see also id.* at 70 ("As with all other mandated reports, [a physician's] failure to report when required to do so would be judged under an ordinary negligence standard.").

Accordingly, Michigan's cap on noneconomic damages in medical malpractice actions does not apply to claims under the state's Child Protection Law for failure to report child abuse.

### B. The Amended Complaint Does Not Assert a Claim for Failure to Report Child Abuse Under § 722.633

The problem for Plaintiff is that she did not assert a claim for failure to report child abuse under § 722.633 in her amended complaint and cannot do so now. The Sixth Circuit has repeatedly held that plaintiffs may not expand their claims at summary judgment. *See, e.g.*, *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019);

*Alexander v. Carter*, 733 F. App'x 256, 265 (6th Cir. 2018); *Howard v. Tennessee*, 740 F. App'x 837, 842–43 (6th Cir. 2018); *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007). This is because "if the plaintiff raises the new claims for the first time in the summary-judgment briefing, it generally 'subjects a defendant to "unfair surprise," because the defendant has no opportunity to investigate the claim during discovery.'" *Davis*, 945 F.3d at 496 (quoting *M.D. v. Bowling Green Indep. Sch. Dist.*, 709 F. App'x 775, 778 (6th Cir. 2017)). "And the court's ability to decide the case is similarly undermined, as the 'gravamen of the dispute' had not been 'brought frankly into the open for inspection by the court.'" *M.D.*, 709 F. App'x at 778 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512–13 (2002)). Therefore, "[p]arties who seek to raise new claims at the summary-judgment stage must first move to amend their pleadings under Federal Rule of Civil Procedure 15(a) before asserting the claims in summary-judgment briefing." *Davis*, 945 F.3d at 496 (citations omitted).

Here, the amended complaint includes a single claim for "MEDICAL NEGLIGENCE." (ECF No. 5, PageID.82 (emphasis

omitted).) Under that claim, Plaintiff asserts that Dr. Bernardino "owed a duty to [RRKC] ***to adhere to the applicable standards of care for a reasonable physician*** providing care to a newborn child." (*Id.* at PageID.82, ¶ 90 (emphasis added).) The amended complaint goes on to allege that "the defendant United States is legally responsible for the ***professional negligence and/or malpractice*** on the part of . . . Dr. Bernardino" and cites to a Michigan Supreme Court case on medical malpractice. (*Id.* at PageID.85, ¶ 93 (emphasis added) (citing *Grewe v. Mt. Clemens Gen. Hosp.*, 404 Mich. 240 (1978)).) Plaintiff similarly asserts that RRKC suffered severe and permanent injuries "as a direct and proximate result of the ***professional negligence and/or malpractice*** of . . . Dr. Bernardino."[6] (*Id.* at PageID.86, ¶ 94 (emphasis

---

[6] Plaintiff also references "professional negligence and/or malpractice" in describing RRKC's alleged injuries:

> ii. The need for medical procedures and treatment that would not have been necessary ***in the absence of professional [negligence] and/or malpractice***, including but not limited to, intensive care treatment and monitoring, burr hole drainage, optical surgeries, and treatment with anti-epileptic medications;
>
> . . .
>
> v. The cost of future medical care, rehabilitation expense[s], nursing expense[s], special needs, special education as well as other itemizable costs and expenses related to the damages sustained

added).) The amended complaint's repeated framing of Plaintiff's claim in terms of medical malpractice is inconsistent with a claim under § 722.633 for failure to report child abuse based on ordinary negligence. *See Lee*, 285 Mich. App. at 62–64.

Additionally, Plaintiff's amended complaint identifies 29 ways in which Dr. Bernardino allegedly breached his duties to RRKC. (*Id.* at PageID.83–85.) While several of these purported breaches reference failure to report suspected child abuse, Plaintiff frames those breaches in terms of Dr. Bernardino's obligations as a physician.[7] (*See id.* at PageID.83–85, ¶ 92(d), (h), (k), (q), (bb).) These same allegations are then listed as breaches of the applicable standard of practice or care in an affidavit of merit from Dr. J. Wesley Cook attached to the amended

---

> **as a result of the professional negligence and/or malpractice** on the part of the defendants. This includes expenses incurred in the past and those that will occur in the future[.]

(ECF No. 5, PageID.86, ¶ 94.)

[7] For example, the amended complaint alleges that Dr. Bernardino failed to "[t]imely and appropriately **diagnose and institute a plan of care** to treat and manage infant patient's condition(s), . . . including, but not limited to serial weight checks, immediate referral to a hospital for care, [and] reporting to Child Protective Services as required by Mich. Comp. Laws § 722.625[.]" (ECF No. 5, PageID.83, ¶ 92(d) (emphasis added).)

complaint.[8] (*See id.* at PageID.92–94, § C, ¶¶ 4, 8, 11, 17, 30.) In doing so, Plaintiff further underscores that the sole count in the amended complaint is for medical malpractice, not failure to report child abuse under § 722.633.

In her reply, Plaintiff contends that, under *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014), she was not required to plead legal theories in support of her claim. (*See* ECF No. 68, PageID.1002–1003.) However, the Sixth Circuit has explained: "*Johnson* involved pleadings at the motion to dismiss stage. And this Circuit has refused to apply *Johnson* to summary judgment cases." *Ohio State Univ. v. Redbubble,*

---

[8] Under Michigan law, an action alleging medical malpractice must be accompanied by an affidavit of merit by a health professional that addresses:

(a)   The applicable standard of practice or care.

(b)   The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility [being sued].

(c)   The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.

(d)   The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.

Mich. Comp. Laws § 600.2912d(1).

*Inc.*, 989 F.3d 435, 445 (6th Cir. 2021) (citations omitted) Plaintiff's reliance on *Johnson* at summary judgment is therefore unavailing.

Plaintiff also points to allegations in the amended complaint that she asserts "put defendant on notice" of her claim under Michigan's Child Protection Law. (*See* ECF No. 68, PageID.1003–1004.) For example, Plaintiff asserts that "[t]he very first paragraph of that pleading specifie[s] that defendant 'failed to diagnose *and report* evidence of child [abuse].'" (*Id.* at PageID.1003 (second alteration and emphasis in original) (quoting ECF No. 5, PageID.71, ¶ 1).) However, like the allegations discussed above, that first paragraph goes on to specify: "As a direct and proximate result of these acts of ***professional negligence and/or malpractice***, RRKC suffered . . . permanent neurologic and physical impairments." (ECF No. 5, PageID.71, ¶ 1 (emphasis added).) Plaintiff also relies on ¶ 91, in which she alleges that Dr. Bernardino "further owed a duty to [RRKC] to exercise due care and caution and to protect her from abuse by her parents." (*Id.* at PageID.82, ¶ 91.) But that alleged duty is not consistent with the duty imposed by the Child Protection Law, which only obligates a mandatory reporter "who has reasonable cause to suspect child abuse or child

neglect" to "make an immediate report" online or via phone.[9] Mich. Comp. Laws § 722.623(1)(a). Plaintiff's reliance on ¶¶ 83 and 84 is similarly unpersuasive. Those paragraphs merely state that "Dr. Bernardino and other staff at GLBHC had a mandatory duty to report suspected abuse or neglect of a child under Michigan law, MCL 722.625"[10] and failed to do so prior to RRKC's hospitalization on June 24, 2019. (ECF No. 5, PageID.81, ¶¶ 83, 84.) However, it is not clear from these allegations when Dr. Bernardino should have had reasonable cause to suspect child abuse or neglect or on what basis. As such, the allegations on which Plaintiff relies are insufficient to assert a separate claim for failure to report child abuse under § 722.633, particularly in light of Plaintiff's repeated emphasis on "professional negligence and/or malpractice" throughout the amended complaint.

Plaintiff further asserts that Defendant was put on notice of her claim for failure to report child abuse based on her pre-suit Form 95

---

[9] If the initial report is made via phone, the mandatory reporter must also file a written report within 72 hours. Mich. Comp. Laws § 722.623(1)(a).

[10] The provision cited repeatedly by Plaintiff in the amended complaint, Mich. Comp. Laws § 722.625, concerns confidentiality and immunity for reporting or assisting in an investigation under Michigan's Child Protection Law. However, the mandatory duty to report based on "reasonable cause to suspect child abuse or child neglect" arises under Mich. Comp. Laws § 722.623(1)(a).

and her counsel's conduct during discovery in this case. (*See* ECF No. 68, PageID.1004–1005.) However, Plaintiff fails to point to any authority in support of this position. And Defendant's awareness that Plaintiff *could have* raised a claim under § 722.633 does not excuse her failure to do so prior to filing the present motion for summary judgment. *See Alexander*, 733 F. App'x at 264 ("A defendant's knowledge that the . . . theory of liability exists does not prove his awareness that a plaintiff may seek or obtain recovery based on that theory.")

Accordingly, the amended one-count complaint does not include a claim for failure to report child abuse under § 722.633, and Plaintiff cannot amend her medical malpractice claim in her motion for summary judgment.[11]

_____

[11] While not dispositive, the Court notes that Plaintiff's conduct during this case is consistent with the Court's conclusion regarding the scope of the amended complaint. For example, Plaintiff's statement of the case in the parties' joint discovery plan explains succinctly: "This is a ***medical malpractice case*** involving the failure to recognize, diagnose and timely respond to on-going abuse and neglect in a newborn." (ECF No. 22, PageID.179 (emphasis added).) And in her proposed second amended complaint, Plaintiff modified several references to "professional negligence and/or malpractice" to instead identify "***ordinary negligence***, professional negligence and/or malpractice," including in the context of her existing medical negligence claim. (*See* ECF No. 42-7, PageID.417, 433, ¶¶ 1, 105, 106.) This further underscores that the operative complaint's sole count of medical negligence

## IV.   Conclusion

For the reasons set forth above, the Court DENIES Plaintiff's motion for partial summary judgment. (ECF No. 62.)

IT IS SO ORDERED.

Dated: May 22, 2024                   s/Judith E. Levy
Ann Arbor, Michigan                   JUDITH E. LEVY
                                      United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 22, 2024.

                                      s/William Barkholz
                                      WILLIAM BARKHOLZ
                                      Case Manager

---

does not encompass an ordinary negligence standard consistent with a claim under § 722.633.